justice, so shal we Danyal Shaikh v. Texas A& M Univ Clge of Medc, et a , esome europeans процесс available to INTERNATIONAL COUNCIL. My name is Martin Sirkel and I am the Attorney of Record for Mr. Danyal Shaikh, the appellee in this cause. We are here today to argue that the district court erred when granting the motion to dismiss filed by the Texas A&M defendants, now appellees. It is our belief that he weighed the evidence and made incorrect inferences in favor of the University Medical School, which is the incorrect standard for the district court to use in a Rule 12b-6 motion to dismiss. As will be more fully described herein and hereafter, we pray that this court grant our appeal and man the case back to the district court accordingly. While the underlying factual resume is somewhat lengthy and provides a very good historical resume for what occurred, what I'll call the reader's digest          Magna Cum Laude program. He was a member of the A&M Medical School's Magna Cum Laude program. He was a member of the A&M Medical School's Magna Cum Laude after completing his bachelor's level program at A&M. During the first years at the school he was very successful. He began to have significant what appeared to be mental health problems. The mental health problems were notable to everybody. In fact, the staff at the school referred him to a therapist at the health center and then the therapist at the health center referred him to a psychiatrist who also worked for the medical school, for the school at-large at the health center. So everybody was really on notice at what was going on with this guy. He failed the third party licensing exam after he actually completed his three years there very successfully. He agreed to a one year leave of absent based upon what was considered a mental condition. And then he sought readmission. And this is where, as we say, the plot thickens. He talks to one of the admission counselors, one of the admission deans actually, and the dean says to him he was not an acceptable applicant and that he was a liability for psychiatric reasons. I thought he wasn't acceptable because he hadn't passed that board. That is one of the issues that I want to speak about. Maybe you kind of hit the core, so I'm going to leapfrog what I was going to say and address that more, more specifically. So what I want to talk about today, I think most importantly, is a Section 504 case. What are the requirements in the Section 504 case? We know that the gentleman has to be, have a person, has to be a person with disability, has to major life functions, he has to be otherwise qualified, which is part of the issue there. And by the way, during the factual resume of the case, he speaks to a number of deans and many, many different times and they say, please apply for readmission. We think you're a good candidate. We think you're going to get there. We think we're ready to happy to have you come back in. So we think he satisfies that otherwise qualified issue. I hope you will also address whether or not your case, your suit is barred by sovereign immunity. Yeah, that has to do with the ADA issue, Your Honor. And what I was going to bring up, and now's a good time to do that as well. Well, I understand Judge Dennis wants to hear that. I really want to hear about the 504 and then the ADA. I thought you started on 504. That's what I was going to jump to. Were you done? Oh, no. All right. Whichever order, but obviously we're interested in voting. I didn't mean to redirect you. I just said, before you run out of time, I hope you address sovereign immunity. I've been here a couple of times so I've figured out how to get redirected and bounce back. But anyway, so on the 504 issue, the key issue is this solely language. Right. This key issue is the solely language. And and even the defendant now aptly in their motion to dismiss noted that the key issue was this causation concern. And in Bennett Nelson versus Louisiana Board of Regents, Fifth Circuit case 431 F. 3rd 448 2005, the court went through a lengthy analysis about when the solely means solely. When does it not make a difference? And at the end of the day, in a footnote, the court mentioned, well, that particular case, it didn't make a difference because they were dealing with an access issue, actually access based upon physical barriers. And of course, we believe this case is also an access issue because he wasn't given access to to the medical school when he reapplied. But the important footnote is that they said that the causation issue is relevant. In Bennett, it wasn't. But in the footnote, it said if it is relevant. Which the. State has already said this causation issue is relevant. They do it in their response at page 22. Then that's a fact issue. That's an issue that has to go through further discovery. So it's our proposition for today that it's almost impossible to deal with this solely issue as a motion to dismiss. In fact, there's a Brennan versus Stewart case that also talks about 504 and ADA. And it, too, makes an important distinction. That's certain issues. In that case, it was whether the person was qualified or not. Certain issues have to go through discovery. And I think that's the lesson that is most relevant from the line of cases that flow from the Bennett-Nelson case. And that's the issue before the court today. I mean, there's all there's case all over the place that says there's always other reasons. They're always going to find a reason. In fact, some of those reasons are stereotypical. Here, the reason is, well, he failed the test. Right. But if he failed the test because he was too disabled to pass the test, has that become another reason? Or is that entwined with the solely part of it? So I think, once again, this kind of a case and this kind of an issue, particularly under a Section 504 standard, which I believe is the strongest part of our case. I mean, we have an admission. We have an admission that they kept him out because of his psychiatric history. And they said he's a liability because of that, which also right in connection with the 504 because, like Judge Dennis, I want to hear about the ADA and the sovereign immunity. But in connection with the 504, I want to understand whether it's one or both. Whether you're claiming that there was a failure to accommodate him when he was, in fact, disabled when he was having all the symptoms related to the tumor. Or are you claiming that he is being perceived now as someone with a disability and that that is at least, in part, a reason given for denying his readmission? Or is it both? Both are true. I mean, the heart of the case is the readmission issue. But the facts of the case also was that he didn't get accommodations along the way that arguably would have prevented or averted the issue to begin with. So if he had been accommodated, he never would have been required to withdraw. They would have accommodated him along the way. And once the tumor, the effects of that were negated, he would have still been a stick. Which is another side issue because, as we found out later, it wasn't a mental health problem that he had. He had a brain tumor. And once again, unlike a previous case... But what accommodations were you seeking at that time? Well, at that time, he didn't seek any, which I think, which the case law, of course, says normally in most situations he has a duty to come forward to profess that. We know that. But also the case law also shows, the Rizzo case, I have the site here as well, and also the Bennett-Nelson case and other cases in the same lineage say, if it's well known to everybody and he, and everyone knows he has a disability, then they have a duty to accommodate. In fact, clearly here, the A&M staff knew he had a disability. In fact, they referred him to a therapist and they referred him to a psychiatrist. In essence, there were some accommodations even to begin with. So, going back to his honest question, it could and should have there been other accommodations addressed? Well, that too is a fact issue that has, that's not before us at this date. But at least for pleading purposes, and once again, we're dealing with a motion to dismiss, not a motion for summary judgment, have we raised enough facts to show, one, that he's a person with a disability, two, that he should have been accommodated, and three, that he was otherwise qualified, and that because of or solely because of... But is it your stronger argument that he is now, in fact, completely qualified to be readmitted, but that he's being discriminated against because he's perceived, or at least the reason they gave was because he has a psychiatric lack of it? They said that. I mean, that's their statement. I mean, many... No, my question was, is that your stronger argument as between the two? It is. All right. It is. And the stronger argument is what I call the access or the readmission part of the case. But are you still seeking readmission? I thought he had gone to some other med school or something. He is. He's in med school. He's doing quite well. But are you seeking readmission to this school? No, we're seeking damages at this point. Right. Just looking for money. Correct. You know, help make him whole. As we know, medical school is a fairly expensive aspect, so he has some significant loans out there, Your Honor. So once again, and I've got a few minutes left, so I'll start talking about the other cases, but I do want to say at the heart of the case, I believe case that we have to win on really, because the ADA part of the case under current case law is a little bit weaker and we know constitutional claims are even weaker. So, so once again, if there's any questions related to this 504 issue and the solely language, I'd like to help flush that out even further, because once again, under current fifth circuit case law, when causation is an issue, and that's what it says in the Bennett case, that the only difference between 504 and the 504 is that the defendant is not allowed to have a causation, and even once again, counsel in his brief admitted that it's a causation issue. Well, if it's a causation issue, then it has to go back to the district court for a discovery, which also was talked about in the Bennett case, and then the opportunity for a motion for summary judgment to deal with it there. In terms of the ADA claim, you know, it's our belief that the plain language of the statute says that the 11th amendment of the ADA is not a causation, and it's clear that in the language of the statute, the educational concerns are considered part of what that waiver includes. Under Lane, and there's a significant language in Lane that deals with, in a footnote, that deals with education absolutely being considered as part of the ADA and as part of the waiver. The other thing that the Georgia case talks about is you would have to show that there's a constitutional violation. Well, if we go back to Lane, the other case that was decided in Lane had to do with a court reporter who was paraplegic, and she too needed accommodations to get into the courthouse. And at the same time, the Supreme Court really dealt with both cases, even though the Lane case is the more famous one. So the question becomes, if the under the ADA pursuant to the Lane decision, why shouldn't Shake? She did not have any particular fundamental right, unless we look to her property right to work at the court. And if that property right is what the court based it on and didn't say, we don't know, then surely Shake, who has a significant amount of money and time, also put into school, had a similar property right. So we would argue that the ADA, both upon the plain language of it, and the case law based upon Lane, we satisfy that criteria as well. Do you think he has a property right to be readmitted? Sounds like what you're saying. The short answer is, we are arguing that there would be such a property right based upon the previous failures of the A&M medical school. I mean, the court admitted he had a property right. And in fact, the exact language that the judge used, he has a property interest in education if he meets the school standards. Once again, a fact issue, did he make the school standards? Well, he certainly, up until the time he was left of school, he was excelling. Did he meet the school standards during this readmission process? Well, we think he was otherwise qualified because every single dean he spoke to said, come on back in. But he still had to pass the boards. Excuse me, Your Honor? He had to pass the boards to be readmitted. They could say, come on back, but you still have to pass the boards before you come on back. A question that was left unanswered, and I really don't know this, actually, so I'll be direct about it, was whether he had to pass that first to be readmitted, or that was just another condition, meaning that would be an accommodation. You won't have to pass it, and then you come back, and then you take it again later. So the answer is, I don't know. I really don't know. There's nothing in the record that I know that reflects that. Maybe counsel knows. Yes, Your Honor. Okay. But the property right gets you the constitutional violation. Right, right, right. And so what is the possibility that you could have a claim which is simply that the ADA abrogates the sovereign immunity, and you could bring a claim for a violation under ADA? That is our- Is that an open question? That's an open question. We've argued that, and I'm sure counsel will speak to that. My time is basically up. I'll do the best I can when I get back.  Also, please let me know if you have any cases that support your intention about the property right. On the property issue. I will, Your Honor. Thank you. Thank you. Thank you, sir. Mr. Hudson. May I please the court? Counsel. I think based on the questions from the court, I'll start with the property right issue. What I would point out to the court is that the court customarily views property rights as it relates to academic decisions and assumes the property right exists, but I'm not aware of any Fifth Circuit case that actually finds a property right in an education in a university. Rather, what the courts typically do, or what the Fifth Circuit typically does, is it will say something along the lines of, assuming such a property right exists, and then moves on. An example of that would be Smith v. Davis at 507 Fed Appendix 359. It's a 2013 case here out of the Fifth Circuit. But what I would say is that they're not even asserting that they have a property right in the education. The factual record that was created by the pleading, which is really what we're focused on here, indicates that Mr. Schaik voluntarily withdrew from the university. At that point, once he voluntarily withdrew from the university, he no longer had a property interest. He had abandoned it. So to the extent that he has any property interest at all, it would be a property interest in readmission to the university. Our briefing cites several cases that indicate that an interest in readmission is not a property right unless it is a bilateral interest. There is nothing in the pleadings that a plaintiff filed in the district court that requires any kind of mutual understanding that Mr. Schaik would be readmitted to the university upon any intervening event. Well, and I know you talk about a mutual understanding, but doesn't he indicate that he was given an option? You either withdraw or you're going to be kicked out anyway. And if you withdraw, then that makes it more likely that you can be readmitted. Doesn't he assert that that's what occurred? Well, the way I may be misunderstanding his assertion. Yes, Your Honor. I respectfully, I would disagree with that characterization of the pleadings. Uh, the way that I understand the pleadings is that his voluntary, uh, his voluntary withdrawal, and maybe, maybe I'm not understanding the question. The voluntary withdrawal, uh, resulted from his belief that he would not be able to be readmitted under any circumstance if he did not withdraw. So yes, it is the case that he did it for that benefit, but he did it for that benefit, meaning he understood that he was leaving the university, uh, with only a promise that he could reapply, not a promise that he would be readmitted. And so the pleadings don't represent any kind of mutual understanding between Mr. Shake, uh, and the university that upon some sort of intervening event, he would necessarily be readmitted to the university. As a result, there's no mutual understanding, uh, between him that would support a property interest in this case, uh, sufficient to find a 14th amendment violation. So it, but it is a fact or you can tell me that he was going to be, he was going to be kicked out if he didn't withdraw. That's the allegation in the pleading. And obviously we're bound to, uh, read the pleadings and like most favorable to him. So at this point, I think it would be a reasonable inference. Um, if this court, uh, believed that he took it as a leave or else, uh, that's a job because he didn't pass the board's right. Uh, that is correct, your honor. And in response to your earlier question, uh, to Mr. Sharkeel, uh, it's not in the record, uh, what happens, but, uh, what I can tell you, uh, based on my understanding from my client is when you don't pass the United States medical licensing exam, you are not permitted to go forward in the medical school program. And what happens at A&M university college or in any medical school at any medical school in the United States that requires that exam. And so he was at a point in the program, as I understand it from my client, that he was not gonna be permitted to proceed, which is why he was given the leave of absence. Um, again, it's not in the record and I understand the university understands that it's bound by the pleadings, but the fact of the matter is, is that he was given the leave of absence as a student would have been so that he could stop and hopefully pass the USMLE, um, a year, which is what, you know, the, the year gap, which is what, um, is what led to the committee deciding that he wasn't going to be fit for the obviously there's a limited number of seats. And so holding on for somebody that can't pass the exam just doesn't make any sense. Uh, in any event, uh, we don't believe that he has a property interest that would trigger a fundamental rights or a, uh, constitutional violation that exceeds the scope of the ADA. And so we would say that there is no violation, uh, that would trigger Georgia, uh, and because there's no abrogation of sovereign immunity under the ADA without that concurrent, uh, sovereign immunity pursuant to Rickenbacker has not been, uh, abrogated at this point. Uh, we would also assert to this court that this really is not a proper vehicle to evaluate the question of whether sovereign immunity has been abrogated, uh, largely because that wasn't developed below aside from reliance on cases that are already binding on this panel. Uh, and the briefing doesn't really address the issues that, uh, the court would have to address, which is, uh, whether there is some sort of congressional finding supporting, uh, abrogation for purposes of readmission to a medical school in the context of an ADA, uh, claim that would support, uh, abrogation of sovereign immunity. So we would ask that the court, uh, find that sovereign immunity bars the claim because there's no property interest and no concurrent constitutional violation, uh, keeping in mind that, uh, abrogation in this case is really not properly analyzed on the briefing that's before the court. As to the Rehabilitation Act claim, uh, obviously the issue before this court is whether the pleadings support a Rehabilitation Act claim. Now it's our position that, uh, the solely, solely because of standard, the causation standard is what was that issue in the district court. It's not clear from the briefing, uh, here before this court, whether it was an accommodation claim or whether it was a discrimination claim. I believe Judge Graves, you had a question about which it is. Uh, in this case, all the briefing below, uh, and all the that the claim was based on discrimination, uh, wasn't, uh, really until, uh, the briefing got going, that we realized that there might be some sort of accommodation issue. There, there are a couple of points for this court to consider, uh, on that score. The first of which is under the Rehab Act, it is a solely, uh, a sole cause standard. And in this case, the pleadings indicate two reasons that Mr. Shake was given, uh, for the denial of his readmission. The first was, uh, that he was a poor applicant. And the second was that he was a liability for psychiatric reasons. So taking those as true, those are two separate distinct reasons. Uh, this isn't a case, uh, where we have, uh, a claim of pretext. This is a case where we have a claim of two separate causes, uh, putting him outside the, the ambit of the Rehabilitation Act. Uh, I would also point out for the court that it's not clear whether, uh, Mr. Shake ever saw any accommodations. He suggests in his briefing that he did, I understand Mr. Shaquille to have argued that he didn't seek any accommodation, uh, which is my understanding from my client as well. Uh, so to the extent that this is a solely regarded as claim, uh, what I would, what I would ask the court to do is consider that claim in light of the ADAAA amendments from 2008, which expressly exclude the university from having to provide accommodations, uh, where a case is, uh, uh, based solely on a regarded as claim. Under section 42 USC section 12 201 H, uh, public institutions, uh, state agencies like Texas A&M University College of Medicine are excluded from having to provide, uh, accommodations in cases where a disability claim is predicated solely on a regarded as theory. And so in this case, even if this court wanted to send something back down for additional, uh, briefing or additional, uh, discovery, uh, this claim wouldn't be right for that largely because as I understand Mr. Shaquille's argument, this is only a regarded as claim, uh, for purposes of the accommodation. Uh, with that in mind, there's really not anything to send this court back, uh, to send back down to the district court. I would also push back on Mr. Shaquille's assertion, uh, that somehow there is, uh, some sort of ADAAA claim or Rehabilitation Act claim that can be pleaded that will somehow prevent a 12B6 motion, uh, from being filed. In effect, as I understood Mr. Shaquille's argument, uh, he says that if they plead a causation case, uh, under the ADA and Rehabilitation Act, all of a sudden we're barred, uh, from filing a 12B6 based on the factual sufficiency of the pleadings. Um, I don't see anything in the case law and I don't see anything in the briefing that supports the proposition that by pleading a 12B6, uh, that triggers a discrimination claim under ADAAA or Rehabilitation Act, that if causation is at issue, you necessarily, uh, have to go to discovery. Uh, in this case, uh, we don't believe that there was any discrimination that was alleged under the Rehabilitation Act that would trigger discovery again because of the solely, uh, sole causation standard. Uh, and further because of the sovereign immunity issues associated with the ADAAA, uh, we don't believe that that case, uh, either would be right for dismissal because obviously immunity is a question of law that should be decided by the district court. Uh, in this case, we believe that the district court properly decided the, uh, sovereign immunity issue. Uh, and so based on that, if there are no other questions for this court, we would respectfully request that the court, uh, affirm the decision of the district court, uh, uphold the dismissal of the claims and end this, uh, litigation. Thank you, sir. Mr. Circule. Well, Mr. Shaik was given the offer to withdraw from the school. Was it really voluntary? Did he really have the mental state at that time based upon his    I don't know. I don't know. I don't know. I don't know. Was he under duress? Was it coerced? We know they fail, they fail to provide any accommodation so he could stay or address that at all. And we also know what, once again, they were on notice. In fact, they actually provided some accommodations. Well, some of it based upon the mental state that he had at the time, which frankly was caused in part by the misdiagnosis and the mistreatment by the Texas A&M doctor. It's an important fact. It's an important fact. And just as a matter for pleading purposes, we did not only plead to regard it as kind of element and for both of us that wasn't really briefed below that much. For the most part, we stand by our documents, we stand by our pleadings, we stand by our briefing. I just did want to reiterate that as far as I can see, there's an admission that he was kept out because of his mental disability. And there's a fair fact question about whether it's solely or not. And in fact, let me read the exact statement that counsel put together in his reply brief. He was talking about the interplay between the ADA and 504 and he says on page 23, I said 22 before 23, he said Sheikh's ADA claim does not denial of an accommodation puts causation at issue. So right there, squarely, he talks about causation being an issue. And we read that and back to what the 504 section is, which it falls under. So we know there's a causation issue, solely deals with causation that's under the Bennett case. You can't get to an issue of causation until you do discovery. And I think for that reason, plus all the others that we briefed and mentioned today, we ask that the case be, appeal be granted and the case be remanded back to the district judge in accordance with whatever decision the panel makes. Any other questions? Thank you very, very much. Appreciate it. Okay. Thank you, sir. The case is argued in this forum. We take it under advisement.